Priority Send ✗
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
APR 21 2006
CENTRAL DISTRICT OF CALIFORNIA
BY              DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINEX ADAMS,<br><br>　　　　　Petitioner,<br><br>　　vs.<br><br>C.M. HARRISON (Warden),<br><br>　　　　　Respondent. | Case No. CV 05-8848-SVW (RNB)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

　　　This Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## PROCEEDINGS

　　　On December 20, 2005, petitioner (through counsel) filed herein a Petition for Writ of Habeas Corpus by a Person in State Custody. In accordance with the Court's Order Requiring Response to Petition, respondent filed a Motion to Dismiss Petition on March 29, 2006, on the grounds that (a) the Petition was time barred, (b) the Petition was procedurally barred, and (c) one of the grounds alleged in the Petition

///

1

DOCKETED ON CM
APR 24 2006
BY            040

was unexhausted.[1] Petitioner filed opposition to the Motion to Dismiss on April 7, 2006. Thus, this matter now is ready for decision.

## BACKGROUND

On December 21, 1988, petitioner was convicted by a Los Angeles County Superior Court jury of first degree murder and attempted murder. The jury also found true, as to both counts, the special allegation that petitioner personally used a firearm. On March 3, 1989, the trial court sentenced petitioner to state prison for an indeterminate term of 25 years to life on the murder count, plus 2 years for the enhancement on the murder count, plus a consecutive upper term of 9 years on the attempted murder count, for a total term of 36 years to life. (See Lodged Exhs. A, B).

On November 7, 1991, in an unpublished opinion, the California Court of Appeal affirmed the judgment and sentence, but remanded to the trial court for the sole purpose of directing that the determinate term of the sentence be served before the indeterminate term. (See Lodged Exh. F). Petitioner did not petition the California Supreme Court for review of the Court of Appeal decision.

Petitioner's first collateral challenge of his conviction consisted of a petition for writ of habeas corpus filed by his current counsel[2] in the Los Angeles Superior Court on November 1, 2000. The sole claim alleged therein was that petitioner's federal and state due process rights had been violated "when he was convicted of murder based entirely on the false identification by one witness, Richard McDowell." Included with the petition was a declaration ostensibly from McDowell, the attempted murder victim, wherein McDowell purported to recant on his trial testimony identifying petitioner as the person who had attempted to kill him and who had shot

---

[1] The Court's conclusion hereafter that the Petition is time barred renders it unnecessary to reach the procedural bar and exhaustion issues raised by respondent.

[2] All of petitioner's state habeas petitions were filed by his current counsel.

2

and killed the deceased victim. According to McDowell, he had lied in his trial testimony, and been coerced into doing so by the Compton Police Department and the District Attorney. (See Lodged Exh. G).

On November 18, 2000, the Superior Court issued an Order to Show Cause, setting the matter for hearing on February 28, 2001. (See Lodged Exh. H). The People filed a return on January 12, 2001, and petitioner filed a traverse thereto on January 31, 2001. (See Lodged Exhs. I, J). At the February 28, 2001 hearing, after affording both sides the opportunity to be heard, the trial court found that petitioner had not proven by a preponderance of the evidence that he should prevail and that there was not a reasonable probability based on the arguments that the verdict would have been different at trial. On that basis, the Superior Court discharged the Order to Show Cause and denied the habeas petition. (See Lodged Exhs. K, L).

Over two years later, on March 20, 2003, petitioner filed another habeas petition in the Los Angeles Superior Court wherein he alleged the same violation of due process claim. In support of this second petition, petitioner attached the same declaration from McDowell, as well as a declaration ostensibly obtained more recently from another trial witness, Bobby Thompson. In his declaration, Thompson essentially reiterated his trial testimony that he had not seen the car or the shooters, and did not remember the shooting or having previously identified petitioner as the shooter. (See Lodged Exh. M).[3] On April 4, 2003, the Superior Court denied this second habeas petition "as being based on the same facts and law as the prior application, which was denied on February 28, 2001." (See Lodged Exh. N).

---

[3] At trial, evidence had been presented that Thompson had picked petitioner's picture from a photo lineup, had testified at the preliminary hearing that petitioner had fired the shots which struck McDowell and the decedent, and had expressed fears to various police officers that he was afraid of being labeled as a "snitch." (See Lodged Exh. F at 4).

3

Next, petitioner filed a habeas petition in the California Court of Appeal on June 5, 2003, which alleged the same claim and was based on the same evidence. (See Lodged Exh. O). The Court of Appeal denied that habeas petition on June 26, 2003. Its stated rationale was as follows:

> *First, the petition was a successive petition subject to a procedural default. [citations omitted]. Second, to the extent petitioner purports to challenge the court's order of February 28, 2001, petitioner has not provided all the documents necessary for this court to review the order sufficiently, and thus he has not made a prima facie showing of entitlement to habeas corpus relief. [citations omitted]. Third, the declarations of Mr. McDowell and Mr. Thompson do not point unerringly to petitioner's innocence or totally undermine the prosecution's case. [citations omitted]. The offer of a witness to recant his testimony after the trial is viewed with suspicion. "'Even where the trial witness himself files a sworn retraction, the trial judge may weigh its credibility and reject it if he deems it unworthy of belief.'" [citation omitted]. Mr. McDowell's declaration is not credible. The timing of his recantation (shortly before his release from state prison) is suspect, and the portion of the declaration concerning his identification of petitioner to police ("just point at anyone") is inherently incredible. Mr. Thompson's declaration is consistent with his testimony at trial (which was that he saw nothing and did not even know petitioner) and, if called to testify at an evidentiary hearing, he would no doubt be impeached with the same prior inconsistent statement the prosecutor utilized at trial.* (Lodged Exh. P).

On August 21, 2003, petitioner sought leave from the California Court of Appeal to re-file his habeas petition and to augment the record with the trial

4

transcripts, the Superior Court file, and the transcript of the February 28, 2001 hearing. (See Lodged Exh. Q).[4] Per an Order issued on September 4, 2003, the Court of Appeal granted petitioner's request to augment the record, but denied the habeas petition on the basis that petitioner was "procedurally defaulted from raising this issue in unjustified successive habeas corpus petitions." (See Lodged Exh. R).

Petitioner then petitioned the California Supreme Court for habeas relief on March 2, 2004. (See Lodged Exh. S). The California Supreme Court summarily denied that habeas petition without citation of authority on June 8, 2005. (See Lodged Exh. T).

The filing of the instant Petition followed on December 20, 2005.

## DISCUSSION

Since the Petition was filed after the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") on April 24, 1996, it is subject to the AEDPA's one-year limitation period, as set forth at 28 U.S.C. § 2244(d). See Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d 1283, 1287 n.3 (9th Cir. 1997), cert. denied, 522 U.S. 1099 and 523 U.S. 1061 (1998).[5] 28 U.S.C. § 2244(d) provides:

"(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

---

[4] This lodged exhibit actually consists of three separate documents filed in the California Court of Appeal on August 21, 2003.

[5] Beeler was overruled on other grounds in Calderon v. United States District Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998)(en banc), cert. denied, 526 U.S. 1060 (1999).

>        (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
>        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Here, as noted above, petitioner failed to petition the California Supreme Court for review of the Court of Appeal decision on direct appeal. Under the relevant California Rules of Court, his time for doing so lapsed 40 days after the November 7, 1991 filing of the Court of Appeal opinion. See Cal. R. Ct. 24(b)(1) (formerly 24(a)) and 28 (e) (formerly 28(b)). Thus, petitioner's judgment of conviction became final long before the enactment of the AEDPA. Consequently, if measured from the date on which the judgment of conviction became final, petitioner's last day to file his federal habeas petition was April 24, 1997,[6] unless a basis for tolling the statute existed. See Beeler, 128 F.3d at 1287-88.

Although petitioner did not expressly contend in his opposition to the Motion to Dismiss that he is entitled to a later trigger date under 28 U.S.C. § 2244(d)(1)(D)

---

[6] See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

6

based on the delayed discovery of the factual predicate of his claims, the Court has considered this issue. In petitioner's first Los Angeles Superior Court habeas petition filed on November 1, 2000, petitioner's counsel asserted that McDowell's willingness to testify that he had lied at trial and been coerced to do so had not been discovered until a defense investigator visited McDowell at his place of incarceration on July 8, 2000; and that petitioner had lacked the financial means to investigate the case or locate McDowell prior to that time. (See Lodged Exh. G at 3-4). However, at the February 28, 2001 hearing on the Order to Show Cause, petitioner's counsel conceded that "the appellate counsel and assistants he had before should have done more to try to develop this evidence," and that "this was probably negligence on their part." (See Lodged Exh. K at 15). Based on that concession, the Court finds that petitioner has not shown that the factual predicate of his claim based on McDowell's allegedly false and coerced testimony could not have been discovered through the exercise of due diligence prior to the time the conviction became final. Further, it goes without saying that the Thompson declaration submitted in support of petitioner's second Superior Court habeas petition filed over two years later on March 20, 2003 does not entitle petitioner to a later trigger date under 28 U.S.C. § 2244(d)(1)(D), since Thompson did not state anything in his declaration that was materially different from his trial testimony (or could not have been brought out on cross-examination at trial).

28 U.S.C. § 2244(d)(2) provides:

> "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104 (2000), the Ninth Circuit held that "the AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of

7

state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" Accord Carey v. Saffold, 536 U.S. 214, 219-21, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002). However, petitioner would not be entitled to any statutory tolling during the interval between April 24, 1996, when the statute commenced running, and the date he filed his first state collateral challenge. See Nino, 183 F.3d at 1006.

Thus, by the time petitioner filed his first collateral challenge on November 1, 2000, the one-year limitation period already had lapsed. Accordingly, the Court concurs with respondent that petitioner is not entitled to statutory tolling for any of his state habeas petitions. See, e.g., Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.) (holding that § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed), cert. denied, 124 S. Ct. 328 (2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Wixom v. Washington, 264 F.3d 894, 898-99 (9th Cir. 2001), cert. denied, 534 U.S. 1143 (2002); Green v. White, 223 F.3d 1001, 1002 (9th Cir. 2000).[7]

---

[7] The Court also notes that, even if the information obtained from McDowell by the defense investigator on July 8, 2000 entitled petitioner to a later trigger date under 28 U.S.C. § 2244(d)(1)(D) and thereby rendered petitioner's first Superior Court habeas petition timely filed, petitioner would not be entitled to statutory tolling for the more than two year interval which elapsed between the denial of his first Superior Court habeas petition and the filing of his second Superior Court habeas petition. In Saffold, 536 U.S. at 219-21, the Supreme Court held that, for purposes of statutory tolling, a California petitioner's application for collateral review remains "pending" during the intervals between the time a lower state court denies the application and the time the petitioner files a further petition in a higher state court. More recently, in Evans v. Chavis, 126 S. Ct. 846, 854, 163 L. Ed. 2d 684 (2006), the Supreme Court concluded that, even where the state court's denial order did not specify that the petition was being denied for untimeliness, an unexplained delay of six months did not "fall within the scope of the federal statutory word 'pending' as interpreted in Saffold." Here, the delay between the successive Superior (continued...)

In Beeler, 128 F.3d at 1287-89, the Ninth Circuit further held that the timely filing of a habeas petition was not jurisdictional, but rather was subject to equitable tolling. The limitation period, however, could be equitably tolled only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." See also Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Here, petitioner did not even purport to address the equitable tolling issue in his opposition to the Motion to Dismiss, let alone make the requisite showing of extraordinary circumstances beyond his control which made it impossible for him to file his federal habeas petition on time.

In his opposition to the Motion to Dismiss, petitioner did purport to invoke the "fundamental miscarriage of justice" exception to the procedural default doctrine. However, petitioner's reliance on that exception is unavailing. Neither the Supreme Court nor the Ninth Circuit has yet decided whether the habeas corpus statute of limitations set forth in 28 U.S.C. § 2244(d) is subject to a "fundamental miscarriage of justice" exception. See Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002). Nor is it necessary for the Court to decide that issue in this case. The Supreme Court has held that, for the "fundamental miscarriage of justice" exception to apply, the petitioner must show that a constitutional violation probably has caused the conviction of one who is actually innocent of the crime. See Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Under Schlup, petitioner must establish his factual innocence of the crime, and not mere legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); Jaramillo v. Stewart, 340 F.3d 877, 882-83 (9th Cir. 2003). The Supreme Court further held in Schlup that, "[t]o be credible, such a claim [of actual innocence]

---

[7](...continued)
Court filings was more than 4 times the length of the delay in Chavis. Thus, at the latest, the one-year limitation period lapsed on November 1, 2001, more than 4 years prior to the filing of the Petition herein.

9

requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." 513 U.S. at 524. Further, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

Here, even if the McDowell declaration qualifies as "new" evidence for purposes of the Schlup standard,[8] the Court finds that it does not qualify as "reliable" evidence for the reasons stated by the California Court of Appeal in its June 26, 2003 denial order. Moreover, for the reasons stated by the California Court of Appeal, the Court finds that the Thompson declaration does not qualify as either "new" or "reliable" evidence for purposes of the Schlup standard. The Court therefore finds that petitioner has not met his burden under Schlup.

Accordingly, the Court finds and concludes that, when the Petition herein was filed on December 20, 2005, it was untimely by over 8-1/2 years.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting respondent's Motion to Dismiss; and (3) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:    April 21, 2006

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[8] The "new" evidence need not be newly available, just newly presented--that is, evidence that was not presented at trial due to unavailability or exclusion. See Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003), cert. denied, 124 S. Ct. 2039 (2004).